[Cite as *State v. Foti*, 2024-Ohio-699.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JAMES JOSEPH FOTI,

        Defendant-Appellant.

**CASE NO. 2023-L-074**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 000255

**O P I N I O N**

Decided: February 26, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, LLC, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}   Appellant, James Joseph Foti ("Mr. Foti"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to an aggregate prison term of 54 months following a jury trial in which he was found guilty of aggravated trafficking in drugs and aggravated possession of drugs.

{¶2}   Mr. Foti raises two assignments of error, contending his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶3}   After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The state presented sufficient evidence, if believed, to prove beyond a reasonable doubt that Mr. Foti committed the offenses of aggravated trafficking in drugs and aggravated possession of drugs.

{¶5} (2) Mr. Foti's convictions are not against the manifest weight of the evidence. Upon review of the record, the jury did not clearly lose its way and create a manifest miscarriage of justice in assessing the confidential informant's credibility.

{¶6} Thus, Mr. Foti's assignments of error are without merit, and we affirm the judgment of the Lake County Court of Common Pleas.

## Substantive and Procedural History

{¶7} This case arose from three controlled drug buys in which Mr. Foti sold or offered to sell methamphetamine to a confidential informant working for the Lake County Narcotics Agency ("LCNA"). Each controlled buy occurred at a house in Willowick, Ohio, where Mr. Foti resided. For each buy, Special Agent 92 equipped the informant with a video/audio recording device and cash, transported him to the destination, thoroughly searched him before and after the transaction, and conducted surveillance during the transaction. Following the transaction, the informant gave Special Agent 92 the drugs and returned any remaining cash and the recording device. The parties then went to the agent's office, where the informant completed "debriefing" paperwork.

{¶8} The first controlled buy occurred on January 17, 2020. The informant made arrangements with Mr. Foti to purchase an ounce of methamphetamine for $200. Special Agent 92 dropped the informant off in front of a supermarket adjacent to the house's backyard. The informant chose to cut through the supermarket to arrive at the house, and Mr. Foti met him at the gate. They entered the back door, and Mr. Foti took him to

2

the upstairs bedroom. Mr. Foti explained that he did not currently have an ounce of methamphetamine but would contact the informant after he obtained more. Mr. Foti gave the informant a small baggie at no charge to "hold him over." After exiting the house, the informant again cut through the supermarket, at which time he purchased a soda, exited the store, and met with Special Agent 92. The agent admonished the informant for cutting through the supermarket. The parties waited a brief period for Mr. Foti to call back, but Special Agent 92 ultimately decided to end the session.

{¶9} The second controlled buy occurred on January 21, 2020. The informant made arrangements with Mr. Foti to purchase 11 grams of methamphetamine for $210. Special Agent 92 dropped off the informant, and he walked to the back of the house. The informant and Mr. Foti went to the upstairs bedroom and exchanged the drugs for money. Mr. Foti obtained the drugs from a green Crown Royal bag in the area of the nightstand. The informant negotiated a $10 discount based on the prior inconvenience. The informant exited the house and met with Special Agent 92.

{¶10} The third controlled buy occurred on January 28, 2020. The informant made arrangements with Mr. Foti to purchase an "8-ball" of methamphetamine for $80 to $100. Special Agent 92 dropped off the informant, who walked to the back of the house. Mr. Foti met the informant on the deck, where they exchanged the drugs for money. The informant left the house and met with Special Agent 92.

{¶11} Following the controlled buys, LCNA obtained a search warrant for the house, which was executed on January 31, 2020. Mr. Foti and a few other individuals were present at the time. In the upstairs bedroom, LCNA collected a plastic container containing three vials, a straw, and a plastic baggie with a small amount of suspected

3

methamphetamine. Special Agent 92 read Mr. Foti his *Miranda* rights and questioned him. Mr. Foti told the agent that the upstairs bedroom was his living area and that the items in his room belonged to him.

{¶12} The suspected drugs from the three controlled buys and the search of the house were sent to the Lake County Crime Laboratory for analysis, and they tested positive for methamphetamine.

{¶13} In May 2020, the Lake County Grand Jury indicted Mr. Foti on seven felony counts. For the first controlled buy, Mr. Foti was charged with aggravated trafficking in drugs in an amount less than the bulk amount, a fourth-degree felony, in violation of R.C. 2925.03(A)(1) (count 1), and aggravated possession of drugs in an amount less than the bulk amount, a fifth-degree felony, in violation of R.C. 2925.11 (count 2). For the second controlled buy, Mr. Foti was charged with aggravated trafficking in drugs in an amount exceeding but less than five times the bulk amount, a third-degree felony, in violation of R.C. 2925.03(A)(1) (count 3), and aggravated possession of drugs in an amount exceeding but less than five times the bulk amount, a third-degree felony, in violation of R.C. 2925.11 (count 4). For the third controlled buy, Mr. Foti was charged with aggravated trafficking in drugs in an amount exceeding but less than five times the bulk amount, a third-degree felony, in violation of R.C. 2925.03(A)(1) (count 5), and aggravated possession of drugs in an amount exceeding but less than five times the bulk amount, a third-degree felony, in violation of R.C. 2925.11 (count 6). For the drugs seized from the house, Mr. Foti was charged with aggravated possession of drugs in an amount less than the bulk amount, a fifth-degree felony, in violation of R.C. 2925.11 (count 7).

4

Each of the seven charges contained a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04.

**{¶14}** Mr. Foti waived his right to be present at his arraignment and entered not guilty pleas. Mr. Foti absconded and was subsequently arrested in October 2022. The case was tried to a jury in June 2023.

**{¶15}** The state presented testimony from Lt. Kemp and Special Agent 92 from LCNA and William Koubek from the Lake County Crime Lab. The state's exhibits included video/audio recordings and screenshots from the drug buys, photos from the search of the house, "debriefing" paperwork, and the lab report. The confidential informant was called as the trial court's witness. Following the state's case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29, which the trial court overruled. The defense rested without presenting testimony or exhibits. The defense renewed its motion for acquittal, which the trial court overruled.

**{¶16}** Following deliberations, the jury found Mr. Foti guilty of all charges. The trial court noted it had received a presentence report regarding two other cases against Mr. Foti and proceeded to sentencing without objection. The trial court merged count 2 into count 1; count 4 into count 3; and count 6 into count 5, and proceeded to sentence Mr. Foti on counts 1, 3, 5, and 7. The trial court sentenced Mr. Foti to prison terms of nine months on count 1; 24 months on count 3; 12 months on count 5; and nine months on count 7. The trial court ordered Mr. Foti to serve his prison terms consecutively to each other, for an aggregate prison term of 54 months, and consecutively to the prison terms imposed in the other two cases. The trial court filed judgment entries memorializing the jury's verdicts and Mr. Foti's sentences.

5

{¶17}  Mr. Foti appealed and raises the following two assignments of error:

{¶18}  "[1.]  Defendant's Convictions are Based on Insufficient Evidence[.]

{¶19}  "[2.]  Defendant's Convictions are Against the Manifest Weight of the Evidence[.]"

## Sufficiency of the Evidence

{¶20}  In his first assignment of error, Mr. Foti contends his convictions were not supported by sufficient evidence.

{¶21}  ""'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990).  "In essence, sufficiency is a test of adequacy." *Id.*  "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*  "[T]he claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence." *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 33.

6

**{¶22}** Due to merger at sentencing, Mr. Foti was convicted of three counts of aggravated trafficking in drugs involving the controlled buys (counts 1, 3, and 5) and one count of aggravated possession of drugs involving the drugs seized during the search of his residence (count 7).

### Aggravated Trafficking

**{¶23}** In counts 1, 3, and 5, Mr. Foti was convicted of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), which provides, in relevant part, "No person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog[.]" Mr. Foti concedes that the informant testified to purchasing methamphetamine from him during the three controlled drug buys. He contends, however, that no one from LCNA actually witnessed the exchange of money for drugs either in person or on camera.

**{¶24}** Mr. Foti is essentially arguing that the informant's testimony required corroboration. We recently rejected this argument in *State v. Little*, 11th Dist. Portage Nos. 2023-P-0011 and 2023-P-0012, 2023-Ohio-4098, ¶ 55. We explained that whether a confidential informant's testimony is believable involves his or her credibility and the weight of the evidence, not its sufficiency. *Id*. "On review for sufficiency, courts are to assess *not* whether the state's evidence *is to be believed*, but whether, *if believed*, the evidence against a defendant would support a conviction." (Emphasis added.) *Thompkins*, *supra*, at 390 (Cook, J., concurring). Therefore, the informant's testimony did not require corroboration.

**{¶25}** Further, the informant's testimony was not the sole evidence implicating Mr. Foti in the controlled buys. Special Agent 92 testified that he was familiar with Mr. Foti's voice and identified it on the controlled-buy recordings. In addition, the video from the

7

second controlled buy depicted Mr. Foti's image during the transaction. Accordingly, the evidence, when viewed in a light most favorable to the state, was sufficient to prove Mr. Foti sold or offered to sell methamphetamine to the informant.

{¶26} Mr. Foti's remaining arguments involve the informant's credibility and/or the weight of other evidence and will be addressed in his second assignment of error.

### *Aggravated Possession*

{¶27} In count 7, Mr. Foti was convicted of aggravated possession of drugs in violation of R.C. 2925.11, which provides, in relevant part, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog[.]" R.C. 2925.11(A). Mr. Foti argues that no witness testified that he ever possessed the drugs seized during the search of the house. Mr. Foti is essentially arguing that the state was required to prove actual possession by direct evidence, which is legally incorrect.

{¶28} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of drugs can be actual or constructive. *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 35. "A person has 'actual possession' of an item if the item is 'within his immediate physical possession.'" *State v. Waters*, 11th Dist. Trumbull No. 2008-T-0121, 2009-Ohio-6151, ¶ 19, quoting *State v. Fugate*, 4th Dist. Washington No. 97 CA 2546, 1998 WL 729221, *7 (Oct. 2, 1998). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus.

8

To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *Id.* at 91.

{¶29} Constructive possession may be supported solely by circumstantial evidence. *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶ 30. Circumstantial evidence is the proof of facts by direct evidence from which a factfinder may reasonably infer the existence of other facts. *State v. Pistillo*, 11th Dist. Lake No. 2003-L-183, 2004-Ohio-6333, ¶ 20. "Circumstantial evidence and direct evidence inherently possess the same probative value," and "[i]n some instances certain facts can only be established by circumstantial evidence." *Jenks, supra*, at 502. For instance, this court has recognized that "[a]bsent an admission by a defendant or direct testimony by another with knowledge, the defendant's knowledge of the presence of illegal drugs where the crime charged is possession of drugs often must be proven via circumstantial evidence * * *." *State v. Hudson*, 2018-Ohio-133, 104 N.E.3d 25, ¶ 48 (11th Dist.).

{¶30} There is no dispute that Mr. Foti lived in the upstairs bedroom of the house and was present on the day of the search. According to Special Agent 92, Mr. Foti told him that the items in his bedroom belonged to him. In addition, the first and second controlled buys took place in Mr. Foti's bedroom. In the video for the second controlled buy, Mr. Foti can be observed retrieving items from his nightstand, which the informant testified was methamphetamine. This evidence, when viewed in a light most favorable to the state, supports an inference that Mr. Foti possessed the items discovered in his bedroom, including the methamphetamine. *See Hudson* at ¶ 54 (sufficient evidence of possession found where appellant had personal items in a locked bedroom containing the drugs).

Case No. 2023-L-074

{¶31} Mr. Foti's first assignment of error is without merit.

## Manifest Weight of the Evidence

{¶32} In his second assignment of error, Mr. Foti contends his convictions are against the manifest weight of the evidence.

{¶33} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury [or trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶34} "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d

10

77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶35} Mr. Foti contends that his convictions are against the manifest weight of the evidence because no one in law enforcement witnessed drugs or money changing hands, and several other people were present in the house during each controlled buy, any of whom could have been the source of the drugs. He further contends that the informant had an extensive criminal history and pending charges and did not follow proper procedure during the first controlled buy.[1]

{¶36} Mr. Foti's arguments assume that the informant was not credible when he implicated Mr. Foti in the controlled drug buys. However, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact[,] and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶37} The record indicates that the informant was a challenging witness. On one hand, the informant had an extensive criminal background, was an admitted drug user and trafficker, and had made prior statements to Mr. Foti's sister indicating he did not buy drugs from Mr. Foti. On the other hand, the informant did not benefit from cooperating

---

1. Mr. Foti's manifest weight arguments involve only his aggravated trafficking convictions (i.e., counts 1, 3, and 5).

11

with LCNA because he did not fulfill his obligations; he made it clear at trial that he did not want to testify; and his testimony implicating Mr. Foti was fully consistent with his prior statements to LCNA and his debriefing paperwork. The jury was free to consider these competing factors in assessing the informant's credibility. Upon review of the record, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, Mr. Foti's convictions are not against the manifest weight of the evidence.

{¶38} Mr. Foti's second assignment of error is without merit.

{¶39} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.

JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.